IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

DEBORAH M. DEMACK,

        Plaintiff,

v.                                                                                 CIV 10-00288 KBM/WDS

OFFICE OF THE ATTORNEY GENERAL
of the State of New Mexico; GARY K. KING,
Attorney General, individually and in his official
capacity; ALBERT J. LAMA, Chief Deputy Attorney
General, individually and in his official capacity,

        Defendants.

# **MEMORANDUM OPINION AND ORDER**

THIS MATTER is before the Court on Defendants' Motion to Dismiss Plaintiff's Amended Complaint for lack of subject-matter jurisdiction. *Docs. 12, 38.* Pursuant to 28 U.S.C. § 636(c) and FED. R. CIV. P. 73(b), the parties have consented to have me serve as the presiding judge and enter final judgment. *Docs. 7, 13.* I held a hearing on Defendants' Motion to Dismiss Plaintiff's Complaint *(Doc. 12)* and Plaintiff's Motion to Amend her Complaint *(Doc. 24)* on October 15, 2010, at which time I granted Plaintiff's Motion to Amend, took Defendants' Motion to Dismiss under advisement, and directed the parties to file supplemental briefing. Having heard oral argument from both parties and carefully reviewed the submitted motions and the memoranda, as well as the relevant authorities, I find that Defendants' Motion to Dismiss should be granted in part.

### BACKGROUND

Plaintiff is a former employee of the Office of the Attorney General for the State of New

Mexico. She was initially hired as an Assistant Attorney General in July of 2002 and alleges that she was wrongfully terminated in June of 2008. Plaintiff asserts, among other things, that she was discriminated against and had a property interest in her job and was therefore entitled to due process prior to termination. Plaintiff subsequently filed a grievance with the Equal Employment Opportunity Commission ("EEOC") and the New Mexico Human Rights Bureau ("NMHRB"). She was notified of her right to sue by the EEOC in December of 2009 and by the NMHRB in January of 2010.

On March 29, 2010, Plaintiff filed this action against the Office of the Attorney General of the State of New Mexico ("AGO") and the Attorney General, Gary K. King ("King"), alleging unlawful age and sex discrimination, a violation of due process pursuant to 42 U.S.C. § 1983, breach of contract, and wrongful termination. On May 20, 2010, Defendants filed their Motion to Dismiss all but one of Plaintiff's claims[1] pursuant to FED. R. CIV. P. 12(b)(1) because they were brought against the AGO and King in his official capacity and were therefore barred by the Eleventh Amendment.

Shortly after Defendants filed their reply brief, Plaintiff sought leave to amend her Complaint *(Doc. 24)* to correct certain deficiencies and add claims, which was opposed by Defendants. She also requested permission to file a sur-reply to the motion to dismiss, which I granted. At the hearing held October 15, 2010, I granted Plaintiff's Motion to Amend and ordered her to file the pleading attached to that motion, took Defendants' Motion to Dismiss under advisement, and ordered specific supplemental briefing.

---

[1] Defendants conceded that Congress validly abrogated Eleventh Amendment immunity in enacting Title VII such that a Title VII claim for sex discrimination survives the motion to dismiss at this stage.

2

Plaintiff's newly filed Amended Complaint is against the AGO and King and Chief Deputy Attorney General Albert J. Lama ("Lama"), individually and in their official capacities. Plaintiff has withdrawn her wrongful termination claim and now brings the following causes of action: (1) federal law claims for violation of due process and equal protection pursuant to 42 U.S.C. § 1983; (2) a Title VII claim based on sex and age discrimination; (3) an age discrimination claim under the Age Discrimination and Employment Act ("ADEA"); (4) a federal law claim for violation of the Equal Pay Act ("EPA"); (5) state law claims for sex discrimination and age discrimination under the New Mexico Human Rights Act ("NMHRA"); (6) state law claims for breach of contract; and (7) state law claims for libel, slander, and defamation of character. *See Doc. 35*.

On November 8, 2010, Defendants again filed a motion to dismiss *(Doc. 38)* addressing the Amended Complaint, which incorporated by reference their arguments in the original motion to dismiss *(Doc. 12)*, their response to the motion to amend *(Doc. 26)*, and their arguments presented at the hearing. Defendants' primary proposition is that the Eleventh Amendment bars almost all of Ms. DeMack's claims. In response, Plaintiff contends that the AGO is not an "arm of the State" and further elaborates on that argument in her supplemental brief *(Doc. 37)*. Defendants filed their response to that brief on November 22, 2010 *(Docs. 39)*, so the issues are now ready for ruling.

## STANDARD OF REVIEW

"Rule 12(b)(1) motions generally take one of two forms: (1) a facial attack on the sufficiency of the complaint's allegations as to subject matter jurisdiction; or (2) a challenge to the actual facts upon which subject matter jurisdiction is based." *Ruiz v. McDonnell*, 299 F.3d 1173, 1180 (10th Cir. 2002) (citing *Holt v. United States*, 46 F.3d 1000, 1002-03 (10th Cir.

1995)).  "In reviewing a facial attack on the complaint, a district court must accept the allegations in the complaint as true."  *Holt*, 46 F.3d at 1002 (citing *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990)).

An assertion of Eleventh Amendment immunity calls into question the subject matter jurisdiction of the district court.  *See Ruiz*, 299 F.3d at 1180 (citation omitted).  Pursuant to FED. R. CIV. P. 12(h)(3), "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."

### ELEVENTH AMENDMENT IMMUNITY ANALYSIS

The Eleventh Amendment bars suits in federal court against a state government by its own citizens and by citizens of another state or foreign country.  *See In re New York*, 256 U.S. 490 (1921); *Edelman v. Jordan*, 415 U.S. 651 (1974); *Missouri v. Fiske*, 290 U.S. 18, 28 (1933); *Hans v. Louisiana*, 134 U.S. 1, 15 (1890).  The primary purpose of Eleventh Amendment immunity "is to 'accord the States the respect owed them as' joint sovereigns."  *Federal Maritime Com'n v. South Carolina State Ports Authority*, 535 U.S. 743, 766 (2002) (citing *Puerto Rico Aqueduct and Sewer Authority v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993)).[2]  Obviously, "[t]o assert Eleventh Amendment immunity, a defendant must qualify as a state or an arm of the state."  *Ruiz*, 299 F.3d at 1180 (citation omitted).  Moreover, a suit against a state official implicates the Eleventh Amendment when "the state is the real, substantial party in interest."  *Pennhurst v. Halderman*, 465 U.S. 89, 101 (1984) (quoting *Ford Motor Co. v. Dep't of Treasury*, 323 U.S. 459, 464 (1945)).

---

[2]  "[S]overeign immunity applies regardless of whether a private plaintiff's suit is for monetary damages or some other type of relief."  *Id.* (citing *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 58 (1996) ("[W]e have often made it clear that the relief sought by a plaintiff suing a State is irrelevant to the question whether the suit is barred by the Eleventh Amendment.")).

There are limited exceptions to a state's sovereign immunity, however.  A state may waive its Eleventh Amendment immunity and consent to be sued in federal court, but any such waiver must be explicit.  *See Edelman*, 415 U.S. at 673.  Second, the Eleventh Amendment does not bar suits against state officials which allege violations of federal law.  *See Ex parte Young*, 209 U.S. 123 (1908).  The underlying theory is that when a state officer acts in violation of federal law or the Constitution, he is acting in "his individual capacity" without authority, and therefore, not on behalf of the state.  *See Pennhurst*, 465 U.S. at 102-03.

> If the act which the state [official] seeks to enforce be a violation of the Federal Constitution, the officer, in proceeding under such enactment, comes into conflict with the superior authority of that Constitution, and he is in that case stripped of his official or representative character and is subjected in his person to the consequences of his individual conduct.  The state has no power to impart to him any immunity from responsibility to the supreme authority of the United States.

*Ex parte Young*, 209 U.S. at 159-60.

Finally, Congress may abrogate a state's Eleventh Amendment immunity so long as there is a clear expression of congressional intent and Congress acts "pursuant to a valid exercise of power."  *Seminole Tribe of Florida*, 517 U.S. at 55 (citing *Green v. Mansour*, 474 U.S. 64, 68 (1985)).  "[W]hether Congress has the power to abrogate unilaterally the States' immunity from suit is narrowly focused on one question: Was the Act in question passed pursuant to a constitutional provision granting Congress the power to abrogate?"  *Id.* at 59.  For instance, Congress may override Eleventh Amendment immunity when it enact laws pursuant to Section 5 of the Fourteenth Amendment which specifically provides  that "Congress shall have power to enforce, by appropriate legislation, the provisions of this article."

ANALYSIS OF THE FEDERAL CLAIMS

*I. "Arm of the State" Argument*

Because an assertion of Eleventh Amendment immunity calls into question the jurisdiction of the district court, I must first address Plaintiff's novel argument that the AGO is not an "arm of the State." As stated above, the Eleventh Amendment bars suits in federal courts against a state government by its own citizens. In her Amended Complaint, Plaintiff recognizes that the AGO is "**a state government agency** duly organized and existing under the laws of the State of New Mexico" and that both King and Lama are "**state officer[s]**." Doc. 35 at ¶¶1-3 (emphasis added). Plaintiff nonetheless asserts that "arm-of-the-state status cannot be presumed." *Doc. 37*. She further contends that the Court must engage in a case by case analysis and in so doing, conclude that the AGO is not entitled to Eleventh Amendment immunity. *Id.*

I have not yet found a case performing such an analysis as to the New Mexico Attorney General and his office. Rather, all of the cases I have located simply hold without much discussion that the New Mexico Office of the Attorney General qualifies as an arm of the State. *See e.g., Guttman v. Widman*, 188 F. App'x 691, 2006 WL 1755951, *5 (10th Cir. 2006) (holding that Eleventh Amendment immunity barred any claims for damages against the state defendants, including the attorney general, in their official capacities); *Tast v. Gaming Control Board, et al.*, No. Civ. 03-00312 JAP/LFG, Doc. 30 (D.N.M. June 6, 2003). The reason for the lack of any detailed analysis is really quite simple – the proposition is self-evident.

In *Meade v. Grubbs*, 841 F.2d 1512 (10th Cir. 1988), the Tenth Circuit performed the arm of the state analysis and held that the Oklahoma Office of Attorney General was entitled to Eleventh Amendment immunity. *Id.* at 1525. In making that determination, the Court examined "the powers, nature and characteristics of the agency under state law." *Id.* (quoting *Mount*

6

*Healthy City School Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 280 (1977)). In holding that the Oklahoma Attorney General's Office is an arm of the State, the Tenth Circuit noted that "the Attorney General of Oklahoma serves as the State's 'Chief Law Officer,' . . . and is empowered under the State constitution to exercise '[t]he Executive authority of the State.'" *Id.*

Just like the Attorney General of Oklahoma, the Attorney General of New Mexico serves as the State's chief legal officer and derives his power from the State constitution and statutes. N.M. STAT. ANN. § 8-5-1 (West 1978) ("That the department of justice be, and same is hereby created, with the attorney general as head thereof, which shall be located at the seat of government."); N.M. STAT. ANN. §§ 8-5-2 – 8-5-15. Furthermore, the AGO accounts to the state treasurer for all state funds received and acts on behalf of the interests of the state. *Id.* As such, the Office of the Attorney General of the State of New Mexico would clearly seem an arm of the state entitled to Eleventh Amendment immunity. Indeed, the Supreme Court's holding in *Ex Parte Young* specifically addressed "whether the Eleventh Amendment bar should be lifted" to permit a suit against Minnesota's **attorney general**. *Seminole Tribe of Florida*, 517 U.S. at 74.

At the hearing, I instructed Plaintiff to distinguish the holding in *Ex Parte Young* and *Meade* or any other case finding state attorney generals in their official capacities and their offices to be arms of the state. Plaintiff apparently ignored my instruction to her and again cites to *Watson v. Univ. of Utah Med. Ctr.*, 75 F.3d 569, 574-75 (10th Cir. 1996), and restates her argument that the Court must engage in two general inquiries in determining whether the AGO is an arm of the state: (1) "the characterization of the agency by state law and the extent of guidance and control exercised by the state," and (2) "the extent of financing the agency receives independent of the state treasury and its ability to provide for its own financing." *See also Doc. 37* at 2.

A careful reading of the *Meade* opinion reveals that the Tenth Circuit essentially engaged in *a Watson* inquiry as to the Oklahoma AG but reached a conclusion contrary to that advocated by Plaintiff here. Similarly, the *Meade* court cited to a district court opinion similarly holding that the Kansas AG in his official capacity was protected by the Eleventh Amendment in a suit for damages. *See Steele v. Stephan*, 633 F. Supp. 950, 953-54 (D. Kan. 1986). Plaintiff has been unable to demonstrate why these authorities are not on point. I therefore hold that the New Mexico AGO and the officer defendants in their official capacities are entitled to Eleventh Amendment immunity.

## *II. Due Process and Sex Discrimination Claims Brought Pursuant to § 1983*

Section 1983 "permits an individual to pursue an action against any person who 'under color of any statute, ordinance, regulation, custom, or usage,' deprives the plaintiff of 'any rights, privileges, or immunities secured by the Constitution and laws.'" *Ruiz*, 299 F.3d at 1182. "Congress, in passing § 1983, had no intention to disturb the States' Eleventh Amendment immunity and so to alter the federal-state balance in that respect. . . ." *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 66 (1989). Rather, the "principal purpose behind the enactment of § 1983 was to provide a federal forum for civil rights claims." *Id.*

Here, Plaintiff brings claims for violations of due process and sex discrimination under 42 U.S.C. § 1983. Clearly the AGO has immunity from suit in federal court, and as an arm of the state, cannot constitute a "person" within the meaning of § 1983. *Will*, 491 U.S. at 71. And, although "state officials literally are persons," when the state official is sued in his official capacity, it "is not a suit against the official but rather is a suit against the official's office. . . . [and] it is [therefore] no different from a suit against the State itself." *Id.* (internal citations omitted). State officials, however, may be sued in their official capacities for prospective

8

injunctive relief because "official-capacity actions for prospective relief are not treated as actions against the State." *Kentucky v. Graham*, 473 U.S. 159, 167, n. 14 (1908).

In her original complaint, Plaintiff brought suit against Defendant King only in his official capacity and has rectified this deficiency in her Amended Complaint to also sue him and Defendant Lama in their individual capacities. "[S]tate officials, sued in their individual capacities, are 'persons' within the meaning of § 1983 [and the] Eleventh Amendment does not bar such suits, nor are state officers absolutely immune from personal liability under § 1983 solely by virtue of the "official" nature of their acts." *Hafer v. Melo*, 502 U.S. 21, 31 (1991).

Plaintiff alleges that she had a property interest in her job and asserts that she was terminated from her job without due process of law. Plaintiff's § 1983 action turns on whether she had a property interest in continued employment, which is a question of state law. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 539 (1985) (citations omitted). If she was an "at will" employee, no due process protection is provided by the Fourteenth Amendment. *Id.* Although Plaintiff does not appear to have a written employment contract, she refers to an employment manual and alleges it gave rise to an implied employment contract.

For the purposes of this motion only, Defendants choose not to dispute Plaintiff's allegation that she had a protected property interest in her employment. As explained above, to the extent that Plaintiff is suing King and Lama in their individual capacities for money damages or in their official capacities for prospective injunctive relief, the Eleventh Amendment does not stand as a bar to either the due process or sexual discrimination claims brought pursuant to § 1983. Whether the factual allegations state a viable claim against either King or Lama will present a different question if a motion to dismiss pursuant to FED. R. CIV. P. 12(b)(6) is filed by those defendants.

### III.  Title VII Claim

Plaintiff alleges that she was discriminated against and terminated from her job on the basis of her sex in violation of Title VII.  Defendants concede that Congress validly abrogated Eleventh Amendment immunity when it enacted Title VII such that a federal claim for sex discrimination against the State as an employer is not barred by the amendment.

However, insofar as Plaintiff attempts to bring suit against King or Lama for alleged sex discrimination in violation of Title VII, the claim fails to state a viable cause of action.  Liability under Title VII is "appropriately borne by employers, not individual supervisors." *Haynes v. Williams*, 88 F.3d 898, 901 (10th Cir. 1996).  To the extent that Plaintiff's Complaint alleges discrimination "on the basis of age in violation of Title VII," it also fails.  *Doc. 35* at 6.  Age is not a protected class under Title VII.  *See General Dynamics Land Systems, Inc. v. Cline*, 540 U.S. 581, 586 (2004) ("Congress chose not to include age within discrimination forbidden by Title VII of the Civil Rights Act of 1964").  Accordingly, Plaintiff's Title VII claim for sex discrimination may proceed but only as against the AGO – her employer.

### IV.  Age Discrimination and Employment Act Claim

The Amended Complaint also attempts to bring an age discrimination claim pursuant to the ADEA which provides that it is "unlawful for an employer, to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual . . . because of such individual's age."  29 U.S.C. § 623(a)(1).  However, the Supreme Court has held that "in the ADEA, Congress did not validly abrogate the States' sovereign immunity to suits by private individuals."  *Kimel v. Florida Bd. of Regents*, 528 U.S. 62, 64 & 91 (2000) ("Congress never identified any pattern of age discrimination by the States, much less any discrimination whatsoever that rose to the level of constitutional violation."); *see also Migneault v. Peck*, 204

F.3d 1003, 1004 (10th Cir. 2000). Plaintiff's only available remedies for age discrimination are under state law and in state court. *Id.* Because it is barred by the Eleventh Amendment, Plaintiff's ADEA claim must be dismissed.

## V. *Fair Labor Standards Act Claim*

In her response to the original motion to dismiss, Plaintiff raises claims for violation of the Fair Labor Standards Act ("FLSA") for failure to pay overtime wages and other compensation. *See Doc. 18* at 17. She did not, however, include these claims in her Amended Complaint. Regardless, these claims fail.

"Congress did not act pursuant to a valid exercise of federal power when it purported to abrogate the states' sovereign immunity with regard to wage and overtime claims brought under the FLSA." *Aaron v. State of Kansas*, 115 F.3d 813, 818 (10th Cir. 1997). Specifically, the Tenth Circuit found that certain amendments designed to make state agencies liable under the FLSA "were enacted pursuant to the interstate commerce clause, and not Section 5 of the Fourteenth Amendment" and were thereby ineffective. *Id.* at 815 ("the interstate commerce clause does not provide Congress with the authority to abrogate a state's Eleventh Amendment immunity").

## VI. *Equal Pay Act Claim*

Plaintiff brings a claim against the AGO for violation of the EPA which was enacted by Congress in 1963 as an amendment to the FLSA. *See* 29 U.S.C. § 206(d). And, in 1974, the term "employer" was redefined in the EPA to include state agencies as subject to the dictates of the EPA. *See* 29 U.S.C.A. § 203(e)(2)(C). Pursuant to the statute, an action against a state agency or official for violation of the EPA may be brought in any federal or state court of competent jurisdiction. 29 U.S.C. §216(b).

Unlike the FSLA, Congress did not rely on the interstate commerce clause as its source

of authority to abrogate Eleventh Amendment immunity.  Rather, Congress validly exercised its powers under § 5 of the Fourteenth Amendment when it abrogated the states' immunity for claims under the EPA.  *See Cherry v. University of Wisconsin System Bd. of Regents*, 265 F.3d 541 (7th Cir. 2001).  "The record of gender discrimination identified in that case was sufficient to support the conclusion that Congress validly exercised its authority under § 5 of the Fourteenth Amendment when it extended the EPA to cover gender-based wage discrimination on the part of State employers."  *Id.* at 553.  The Tenth Circuit has yet to decide this issue, but has noted with approval cases which have reached the same conclusion as the Seventh Circuit.  *See Aaron*, 115 F.3d at 817 (citing *Timmer v. Michigan Dep't of Commerce*, 104 F.3d 833, 842 (6th Cir. 1997) (holding that Congress has the power to abrogate the States' sovereign immunity under the EPA pursuant to § 5 of the Fourteenth Amendment.)).  Defendants acknowledge that "[t]o the extent that the Equal Pay Act constitutes a valid abrogation of Eleventh Amendment immunity, this Court may have jurisdiction to hear Plaintiff's claim."  *Doc. 26* at 5.  Accordingly, Plaintiff may proceed with her EPA claim at this time.

### FEDERAL COURT JURISDICTION OVER STATE LAW CLAIMS

Generally, when federal courts obtain jurisdiction over federal claims, they may adjudicate related state law claims over which they would not otherwise have jurisdiction. *Pennhurst*, 465 U.S. at 117.  The Eleventh Amendment, however, "deprives a federal court of power to decide certain claims against States that otherwise would be within the scope of Art[icle] III's grant of jurisdiction."  *Id.* at 119-20.  "[N]either pendent jurisdiction nor any other basis of jurisdiction may override the Eleventh Amendment."  *Id.* at 122.

> A federal court's grant of relief against state officials on the basis of state law, whether prospective or retroactive, does not vindicate the supreme authority of federal law.  On the contrary, it is difficult to think of a greater intrusion on state sovereignty than when a federal

> court instructs state officials on how to conform their conduct to state law. Such a result conflicts directly with the principles of federalism that underlie the Eleventh Amendment. We conclude that *Young* and *Edelman* are inapplicable in a suit against state officials on the basis of state law.

*Id.* at 106. Thus, only if the State has consented to federal court jurisdiction over a state law claim may it proceed to adjudication in a federal forum.

### STATE LAW CLAIMS

Plaintiff brings several employment-based state law claims, some pursuant to the New Mexico Tort Claims Act ("NMTCA") against the AGO, King and Lama including claims for libel, slander, and defamation of character. That Act states that "it is the public policy of New Mexico that governmental entities and public employees shall only be liable within the limitations of the Tort Claims Act and in accordance with the principles established in that act." N.M. STAT. ANN. § 41-4-2. The NMTCA provides that "a governmental entity and any public employee while acting within the scope of duty are granted immunity from liability for any tort except as waived by the New Mexico Religious Freedom Restoration Act and by Sections 41-4-5 through 41-4-12 N.M. Stat. Ann. 1978." § 41-4-4 (A). There are no allegations here that the defendants were acting outside the course and scope of their duties.

"Under New Mexico law, the state's '[c]onsent to be sued may not be implied, but must come within one of the exceptions to immunity under the Tort Claims Act.'" *Ross v. The Bd. of Regents of the Univ. of New Mexico*, 599 F.3d 1114, 1117 (10th Cir. 2010) (citing *Begay v. State*, 104 N.M. 483, 723 P.2d 252, 256 (Ct. App. 1985), *rev'd on other grounds sub nom. Smialek v. Begay*, 104 N.M. 375, 721 P.2d 1306 (1986)). Plaintiff asserts that King and Lama are law enforcement officers acting within the scope of their duties as that term is defined under the

13

NMTCA and thus fall under an exception to suit.[3]

Plaintiff believes that a NMTCA waiver of sovereign immunity from suit equates with consent to be sued in federal court on those claims. This argument conflates the distinction between Eleventh Amendment immunity from suit in federal court with a state's waiver of a sovereign immunity to be sued at all for damages. Here, the State has clearly not consented to suit on the tort claims. Quite to the contrary – the NMTCA expressly preserves its immunity from suit in a federal forum. N.M. STAT. ANN. § 41-4-4F ("Nothing in Subsections B, C and D of this section shall be construed as . . . a waiver of the state's immunity from suit in federal court under the eleventh amendment to the United States constitution."). Thus, if Plaintiff is correct that King and Lama qualify as "law enforcement officers" such that immunity from damages has been waived, that action belongs in state, not federal court. Further, Plaintiff fails to identify any way in which the State has consented to suit in federal court on the contractual or other state claims. *See Re v. Vistas*, 1999 WL 178695 at *2 (10th Cir. 1999) (citing N.M. STAT. ANN. § 28-1-13(C) in holding that Eleventh Amendment immunity bars suit under the New Mexico Human Rights Act in federal court). Accordingly, the state law based claims in the Amended Complaint must be dismissed without prejudice for lack of jurisdiction.

---

[3] It appears that Plaintiff is mistaken. Under the NMTCA,

> "law-enforcement officer" means a full-time salaried public employee of a governmental entity, or a certified part-time salaried police officer employed by a governmental entity, whose principal duties under law are to hold in custody any person accused of a criminal offense, to maintain public order or to make arrests for crimes, or members of the national guard when called to active duty by the governor.

N.M. Stat. Ann. 1978, § 41-4-3(D). This definition is strictly construed by New Mexico courts. Indeed, in *Coyazo v. State*, 120 N.M. 47, 51 (Ct. App. 1995), the Court stated that district attorneys and their staffs are not law-enforcement officers under § 41-4-3(D). The attorney general does not hold persons in custody or make arrests.

Wherefore,

**IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss is **granted in part**:

**(A) The following claims are dismissed with prejudice** as barred by the Eleventh Amendment:

(1) Plaintiff's due process claim under § 1983 against the AGO and King and Lama, in their official capacities, insofar as it seeks retroactive and monetary relief;

(2) Plaintiff's ADEA claim; and

(3) Plaintiff's FLSA claim for failure to pay overtime wages and other compensation.

**(B) All state law claims are dismissed without prejudice** based upon the holding of the Supreme Court in *Pennhurst* that the Eleventh Amendment bars the exercise of pendent jurisdiction by a federal court.

**(C) The following claims may proceed at this time:**

(1) Plaintiff's Title VII claim for sex discrimination against the AGO only;

(2) Plaintiff's claim for violation of the Equal Pay Act; and

(3) Plaintiff's § 1983 claims against King and Lama in their individual capacities or against King and Lama in their official capacities for prospective injunctive relief.

In all other respects, the motion is denied.

_____
UNITED STATES MAGISTRATE JUDGE