IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

DEBORAH M. DEMACK,

    Plaintiff,

v.                                                             CIV 10-0288 KBM/WDS

OFFICE OF THE ATTORNEY GENERAL
of the State of New Mexico,

    Defendant.

# **MEMORANDUM OPINION AND ORDER**

        THIS MATTER comes before the Court on Defendants'[1] Motion for Summary Judgment Due to Plaintiff's Waiver of Claims *(Doc. 249)*, filed November 5, 2012 and fully briefed on December 17, 2012. *See Docs. 249, 274, 283, 284.* Pursuant to 28 U.S.C. § 636(c), the parties have consented to have me serve as the presiding judge and enter final judgment. *Docs. 7, 13.* Having reviewed the parties' submissions and relevant authorities, the Court finds that Defendants' Motion *(Doc. 249)* should be granted in part, as set forth below.

**I.    BACKGROUND**

        On March 29, 2010, Plaintiff filed the instant lawsuit, alleging unlawful age and sex discrimination, a violation of due process pursuant to 42 U.S.C. § 1983, breach of contract, and wrongful termination. *See generally Doc. 3.* Plaintiff subsequently amended her Complaint, withdrawing her wrongful termination claim and asserting the following claims: (1) violations of due process and equal protection pursuant to 42 U.S.C. § 1983; (2) sex and age discrimination

---

[1] Although the motion is brought on behalf of all defendants, all claims against the individual Defendants King and Lama have been previously dismissed. *Doc. 117* at 9.

pursuant to Title VII; (3) age discrimination under the Age Discrimination in Employment Act ("ADEA"); (4) violation of the Equal Pay Act ("EPA"); (5) sex and age discrimination pursuant to New Mexico state law; (6) breach of contract; and (7) libel, slander, and defamation. *See generally Doc. 35.*

Soon after Plaintiff filed her Amended Complaint, I granted, in part, Defendant's Motion to Dismiss *(Docs. 12, 38)*, thereby dismissing certain claims as barred by the Eleventh Amendment. *See Doc. 40.* This ruling left the following claims pending: (1) sex discrimination pursuant to Title VII insofar as it was alleged against the AGO only; (2) violation of Equal Pay Act; and (3) § 1983 claims against Defendants King and Lama in their individual capacities or, to the extent Plaintiff sought only prospective injunctive relief, as against them in their official capacities. *See id.* at 15.

On June 3, 2011, I dismissed Plaintiff's § 1983 due process claims against Defendants King and Lama in their individual capacities on the grounds that Plaintiff could not articulate a protected property interest. *See Doc. 84* at 9. In so ruling, I specifically declined to address the Defendants' argument that Plaintiff had voluntarily waived such claims. *See id. See also Doc. 249-4.* Given this prior ruling, the remaining claims pending were: (1) sex discrimination pursuant to Title VII as against the AGO; (2) violation of the Equal Pay Act; and (3) § 1983 claims of sex discrimination, or denial of equal protection, against Defendants King and Lama in their official capacities, for which Plaintiff is limited to prospective injunctive relief.

By Order of January 25, 2012, I dismissed Plaintiff's § 1983 claim for sex discrimination, or denial of equal protection, finding that Defendants King and Lama were entitled to qualified immunity. *See generally Doc. 117.* In so holding, I assumed without holding that Plaintiff could prove a prima facie case of discrimination and found that the individual defendants had

demonstrated legitimate business reasons for their adverse actions against Plaintiff.  *See id.*  Because Plaintiff could not articulate any evidence that the individual defendants' explanation was pretextual, I found summary judgment was appropriate as to the remaining § 1983 claims.  *See id.*  This left two claims before the Court, both pending only against the AGO: (1) claims of sex discrimination pursuant to Title VII, and (2) alleged violations of the Equal Pay Act.

On September 17, 2012, Plaintiff was permitted to amend her Complaint a second time, adding claims for violation of New Mexico's Inspection of Public Records Act ("IPRA").  *See generally Doc. 186*.  The IPRA claims were recently dismissed based on Defendants' Eleventh Amendment immunity.  *See Doc. 293*.  Thus, there are presently two claims remaining before me:  (1) Plaintiff's claim for violation of the Equal Pay Act and (2) Plaintiff's sex discrimination claim pursuant to Title VII.

Defendants, in the instant Motion *(Doc. 249)*, contend that Plaintiff has waived all remaining claims by virtue of her July 7, 2008 signature, accepting Defendant Lama's offer to resign with certain benefits "[i]n exchange for a full release."  *See generally Doc. 249* (relying upon *Doc. 249-4).*  Plaintiff opposes summary judgment, arguing that Defendants' argument is barred by law of the case and/or the New Mexico doctrine of priority jurisdiction.  *See Doc. 274* at 3-10.  Additionally, Plaintiff purports to dispute the alleged facts, arguing that she did not resign of her own free will and that Defendants failed to perform their end of the agreement on which her waiver was based.  *See Doc. 274* at 12.

## II.     LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  A "genuine" dispute exists where the evidence is such that a reasonable jury

could resolve the issue either way.  *See Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).  A mere scintilla of evidence in the non-movant's favor is not sufficient. *Anderson*, 477 U.S. at 252.  However, the court must consider all the evidence in the light most favorable to the party opposing summary judgment.  *See Trask v. Franco*, 446 F.3d 1036, 1043 (10th Cir. 2006).

Both the movant and the party opposing summary judgment are obligated to "cit[e] to *particular parts* of materials in the record" to support their factual positions.  FED. R. CIV. P. 56(c)(1)(A) (emphasis added).  Alternatively, parties may "show[] that materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  FED. R. CIV. P. 56(c)(1)(B).  *See also Medlock v. United Parcel Service, Inc.*, 608 F.3d 1185, 1189 (10th Cir. 2010) ("[I]f the matter in issue concerns an essential element of the nonmovant's claim, the moving party may satisfy the summary judgment standard 'by identifying a lack of evidence for the nonmovant on [that] element.'" (internal quotation and citation omitted) (alteration in original)).  Materials cited to establish the presence or absence of a genuine dispute must be in a form that would be admissible in evidence.  FED. R. CIV. P. 56(c)(2).

The court need only consider the materials cited by the parties.  FED. R. CIV. P. 56(c)(3). In the event that a party fails to cite materials or otherwise properly address another party's assertion of fact, the court may consider the fact undisputed and, if the motion and supporting materials show that the movant is entitled to it, grant summary judgment.  FED. R. CIV. P. 56(e). The court is also empowered to grant summary judgment, if appropriate, independent of the motion after giving notice and a reasonable time to respond.  FED. R. CIV. P. 56(f).

**III.    ANALYSIS**

    **A.    Undisputed Material Facts**

The following material facts are not meaningfully disputed.  Plaintiff worked for Defendants as an Assistant Attorney General from July 2002 until August 2008.  On June 24, 2008, Plaintiff's supervisor, Consumer Protection Division Director Karen Meyers, provided Plaintiff a memo detailing Plaintiff's job performance issues over the prior year.  *See Doc. 249-2* at 1.  Although Plaintiff disputes the accuracy of Ms. Meyers' comments, she does not dispute having received the memo.  *See Doc. 274* at 11.

At the conclusion of this three-page, single-spaced memo, Ms. Meyers noted, "I do not have confidence in your ability to work independently as an attorney in this division without constant review of all aspects of your work." *Id.* at 3.  Noting that this level of supervision was not appropriate for an attorney with Plaintiff's years of experience, Ms. Meyer, with the approval of the Chief Deputy and the Attorney General, offered Plaintiff the following terms:

> If you choose to resign from your position, the AGO will pay you your accrued annual leave, an addition[al] 80 hours of compensatory leave, and accrued holiday and other administrative leave; your last day in the office will be June 27, 2008; the AGO will agree to designate your last day of employment with the AGO as July 25, 2008 to allow you additional time to complete applications for COBRA health insurance coverage.  If you accept this option, your letter of resignation must be submitted by June 25, 2008, Wednesday morning by 10 a.m.  If you agree with this option, the remainder of this week will be used to transition out of the office and transfer or close out pending matters.
>
> If you do not wish to resign under the above-terms, your last day of employment will be June 26, 2008.  You will be paid your accrued annual leave.

*Doc. 249-2* at 3.  By handwritten letter dated June 25, 2008, Plaintiff resigned her position.  *See Doc. 249-3*.  Though Plaintiff contends her resignation was not voluntary, she does not dispute having resigned.

On July 3, 2008, Chief Deputy Attorney General Albert J. Lama sent Plaintiff a follow-up letter, confirming that Attorney General Gary K. King accepted Plaintiff's June 25, 2008 resignation.  *See Doc. 249-4* at 1.  In response to Plaintiff's requests for additional benefits beyond what was addressed in Ms. Meyers' letter, Chief Deputy Lama made Plaintiff "the following independent offer" on behalf of Attorney General King:

> In exchange for a full release, Attorney General King offers you five (5) additional administrative leave days (June 30, 2008-July 7, 2008); a neutral reference which will be provided upon your request to any prospective employer; and the removal of the June 24, 2008 memo from Karen Meyers and your June 25, 2008 response to said memo from your personnel file.

*Id.* at 2.  Chief Deputy Lama further represented that the offer would "remain open until the close of business on July 7, 2008."  *Id.*  Plaintiff completed the bottom portion of Chief Deputy Lama's letter, dating her signature July 7, 2008 and circling to indicate "OFFER ACCEPTED" under the following typewritten statement prepared by Chief Deputy Lama:

> By signing below, I designate my acceptance of the offer set forth in this letter and the terms of the agreement described above. Further, I agree to hold harmless the Attorney General's Office; Attorney General King, both personally and in his official capacity; and any member of his staff, both personally and in their official capacity; in any matter related to the separation of my employment with the Attorney General's Office.

*Id.*

      **B.**     **The Law Regarding Waiver of Claims**

Employment discrimination claims may be waived by agreement.  *See Torrez v. Pub. Serv. Co. of New Mexico*, 908 F.2d 687, 689 (10th Cir. 1990).  Claims brought pursuant to the

Equal Pay Act may likewise be waived.  *See, e.g., Shaheen v. B.F. Goodrich Co.*, 873 F.2d 105 (6th Cir. 1989); *Wagner v. NutraSweet Co.*, 95 F.3d 527, 532 (7th Cir. 1996).  To be enforceable, however, a waiver must be knowing and voluntary.  *Wright v. Southwestern Bell Tel. Co.*, 925 F.2d 1288, 1292 (citing *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 52 n.15 (1974)).

Rather than ordinary contract principles, the Tenth Circuit employs a totality of the circumstances approach to determine whether a knowing, voluntary waiver exists.  *See Torrez*, 908 F.2d at 690 ("While evaluation of the language of the contract is necessary to determine the validity of the waiver of discrimination claims, our inquiry cannot end there.").  Other factors to consider include:

> (1) The clarity and specificity of the release language; (2) the plaintiff's education and business experience; (3) the amount of time plaintiff had for deliberation about the release before signing it; (4) whether plaintiff knew or should have known his rights upon execution of the release; (5) whether plaintiff was encouraged to seek, or in fact received benefit of counsel; (6) whether there was an opportunity for negotiation of the terms of the Agreement; and (7) whether the consideration given in exchange for the waiver and accepted by the employee exceeds the benefits to which the employee was already entitled by contract or law.

*Id.* at 689-90.

The Tenth Circuit declined to find a knowing and voluntary waiver of employment discrimination claims in *Torrez*, where the written waiver, although clear and unambiguous, did not specifically mention employment discrimination claims and the plaintiff testified that he believed the release was limited to "claims arising out of the voluntary termination and the benefits package he was accepting."  908 F.2d at 690.  The language of the release at issue in *Torrez* provided for the employer's release and discharge "for any and all claims which I have or might have, arising out of or related to my employment or resignation or termination from employment."  *Id.*  The *Torrez* court found that it was not unreasonable for the plaintiff, who had

merely a high-school education and was unfamiliar with the law, to believe the release excluded employment discrimination claims. Thus, the Tenth Circuit ultimately held that there was a material question of fact as to whether the plaintiff had knowingly and voluntarily waived his discrimination claims. *See id.*

By contrast, the Tenth Circuit found a knowing, voluntary waiver of employment discrimination claims in the *Wright* case, where the Plaintiff had endorsed a check, signing just below the following statement:

> RELEASE
> By endorsing and/or negotiating this instrument, employee covenants not to sue or arbitrate, and releases from all claims and/or demands of whatever kind or nature, the Southwestern Bell Telephone Co. and the Communications Workers of America.

925 F.2d at 1290. After considering the same seven factors set forth above, the Tenth Circuit was "convinced Wright's waiver was knowing and voluntary." *Id.* at 1292. It found that "no reasonable person reading this language could have believed he was releasing one but not all the discrimination claims," noting specifically the release of "all claims and/or demands of whatever kind or nature." *Id.*

For the reasons set forth below, I find that the waiver at issue in the present case was knowing and voluntary, but limited to a release of claims arising out of Plaintiff's separation from the AGO. The waiver therefore does not apply to any claims of discrimination occurring during Plaintiff's employment but unrelated to her separation.

> 1. *The Release, By Its Plain Language Bars Claims Arising Out of Plaintiff's 2008 Separation From the AGO, But Not All Claims Arising During the Six-Year Course of Her Employment.*

The language of the release at issue in the present case is clear and unambiguous yet more limited than the releases at issue in both *Torrez* and *Wright*. Whereas the *Torrez* release

includes claims arising out of or related to the plaintiff's employment as well as his resignation or termination from employment, and the *Wright* release applies to "all claims and/or demands of whatever kind or nature," the release Plaintiff in the present case signed is limited to "any matter related to the separation of my employment." Alleged discrimination occurring during the six-year course of Plaintiff's employment, as distinguished from her separation in 2008, is therefore unaffected by the waiver. Thus, Plaintiff's claim of discrimination/denial of equal pay in that she was paid $2,600 less than a male attorney hired at the same time with less experience, *see Doc. 186* at ¶¶ 15-16, would survive in spite of the waiver.

Any claims arising out of Plaintiff's separation from the AGO, by contrast, are specifically contemplated by the plain language of the release. Thus, Plaintiff's allegations that she was replaced by a younger male with less experience, *see Doc. 186* at ¶¶ 21-24, cannot continue in the event that the totality of the circumstances indicate the waiver is enforceable.

> **2.    As an Attorney, Plaintiff is Familiar With the Law and May Be Properly Charged With Understanding the Impact of Her Actions in Signing the Release.**

Unlike the plaintiff in *Torrez*, who had only a high-school education and was unfamiliar with the law, Plaintiff is a trained attorney, having graduated from law school nine years prior to the date the release was signed and having practiced consumer protection law for approximately six years. This education and experience enabled Plaintiff to be fully able to understand her rights upon execution of the waiver. As I have previously noted in this litigation, "because of her education, background and experience, Plaintiff should not be entitled to the lenient pleading rule we generally provide to *pro se* litigants." *See Doc. 79* at 1. The same logic requires me to find that Plaintiff is not entitled to any leniency in the Court's construction of the waiver based on a lack of education or experience in legal matters or a failure to understand or appreciate the

potential legal import of her actions. Similarly, Plaintiff need not have been advised of any right to consult with counsel.

### 3. Considering the Totality of the Circumstances, Plaintiff Had Sufficient Time to Consider the Release and Further Negotiated Its Terms.

Approximately two weeks passed from the time Plaintiff received her immediate supervisor's letter indicating that termination was imminent and the time that she signed the waiver document at issue. *See Docs. 249-2, 249-3, 249-4*. During this time frame, Plaintiff sought and received additional separation benefits beyond those initially offered to her, demonstrating both her relative bargaining power and her willingness to ask questions of her superiors, even after deadlines had passed. *Compare Docs. 249-2* and *249-4*. Further, Plaintiff had four days to consider the exact terms of the waiver. *See Doc. 249-4*. These facts, coupled with Plaintiff's legal education and experience, render me unable to find that Plaintiff lacked sufficient time to deliberate or opportunity to negotiate the terms of the waiver at issue.

### 4. The Consideration Given in Exchange for the Waiver and Accepted by the Employee Exceeds the Benefits to Which the Employee Was Already Entitled by Contract or Law.

As of June 25, 2008, Plaintiff's last day of employment was set to be July 25, 2008, and she was set to receive payment for 80 hours of compensatory leave beyond her accrued annual leave. *See Doc. 249-2 at 3*. These terms were offered by Plaintiff's immediate supervisor. *See id.* After further negotiation by Plaintiff, Chief Deputy Lama offered an additional five days of administrative leave and over a month longer on the AGO payroll, until August 29, 2008. *See Doc. 249-4*. Chief Deputy Lama also offered a neutral employment reference and removal of the June 24, 2008 memo concerning Plaintiff's poor performance from her file. *See id.* In exchange, Chief Deputy Lama required the release or waiver at issue. *See id.*

I find the additional benefits negotiated by Plaintiff to be fair consideration for the release and waiver, particularly considering that the waiver's plain language limits the release to causes of action arising only out of Plaintiff's separation from the AGO. At any rate, there is no question that the consideration Plaintiff received exceeded what she would have been entitled to under the law.

My above analysis indicates that none of the seven factors set out by the Tenth Circuit in the *Torrez* case counsels against enforcement of the waiver of Plaintiff's claims. To the contrary, each such factor suggests that enforcement of the waiver is entirely fair and appropriate in this case. Plaintiff's other arguments in opposition to summary judgment, will be addressed seriatim below.

### C. Law of the Case Does Not Apply.

In response to Defendants' Motion *(Doc. 249.)*, Plaintiff argues that "[t]he Court has already considered the legal merits of Defendants' arguments and decided the same issues and claims Defendants raise again in their Motion for SJ." *Doc. 274* at 5. On this basis she contends that Defendants' Motion should be denied based upon the doctrine of law of the case. *See id.*

"The law of the case doctrine posits that when a court ***decides*** upon a rule of law, that ***decision*** should continue to govern the same issues in subsequent stages in the same case." *United States v. Farr*, 701 F.3d 1274, 1288 (10th Cir. 2012) (quotation omitted) (emphasis added). Plaintiff fails either to understand the doctrine of law of the case or the procedural posture and circumstances of this case. Up to this point, I have not issued any decision or rule of law regarding waiver but instead simply declined to consider Defendants' earlier waiver argument because it was unnecessary at that stage of the litigation. *See Doc. 84* at 9 ("I need not address Defendants' alternative basis for the entry of summary judgment that when faced with

11

the choice of termination or resignation, she admittedly chose to resign and thereby waived any entitlement to due process"). Indeed, Plaintiff acknowledges that "the Court specifically declined to address" the waiver argument in its previous Order. *See Doc. 274* at 4. Because I issued no previous rule of law regarding waiver, the law of the case doctrine does not apply.

        **D.**       **Priority Jurisdiction Does Not Apply.**

Plaintiff also contends that the doctrine of priority jurisdiction requires me to deny Defendants' Motion *(Doc. 249)*. This doctrine is recognized by New Mexico state courts and applies "where two suits between the same parties over the same controversy are brought in courts of concurrent jurisdiction." *See Cruz v. FTS Constr., Inc.*, 142 P.3d 365, 368 (N.M. Ct. App. 2006) (quoting *Long v. McKinney*, 897 So.2d 160, 172 (Miss. 2004)). Under these circumstances, "the court which first acquires jurisdiction retains jurisdiction over the whole controversy to the exclusion or abatement of the second suit." *Id.* Priority jurisdiction, as recognized by New Mexico state courts, consequently "serves the same purpose as *res judicata*, but operates where there is not a final judgment and instead there is a pending case." *Id.* at 369. Under this doctrine, Plaintiff argues that a lawsuit she filed in New Mexico state court, Case No. D-101-CV-2010-02781, should be given priority jurisdiction over the present case. *See Doc. 274* at 6.

The Tenth Circuit does not appear to have recognized the doctrine of priority jurisdiction. Even if I were to apply it, however, it would not require denial of Defendants' Motion. At the outset, Plaintiff filed this action on March 29, 2010 -- well before Plaintiff commenced her state action on August 4, 2010. *See Doc. 1*. As noted above, the doctrine of priority jurisdiction would require dismissal of the later-filed action, in other words, the state action as opposed to this federal lawsuit. *See Doc.* 274 at 6 (acknowledging that "[w]hen the elements of priority

jurisdiction are satisfied, the 'appropriate procedure' is for the court to dismiss the second-filed action without prejudice, pending the outcome of the first-filed case"). I must therefore conclude that the doctrine of priority jurisdiction does not require denial of Defendants' Motion *(Doc. 249)*.

### E. Plaintiff Has Not Substantiated Her Claims That Defendants Breached Their Obligations Pursuant to Chief Deputy Lama's Letter.

Although not clearly articulated, Plaintiff initially suggests that the waiver may be unenforceable in that Defendants failed to live up to their end of the bargain as reflected in Chief Deputy Lama's Letter. *See Doc. 274* at 12. Thereafter, Plaintiff argues that Defendants failed to honor alleged oral agreements made by Defendants but not reflected either in Mr. Lama's July 3, 2008 letter or Ms. Meyers' June 24, 2008 memo. *See id.* (referencing Mr. Lama's alleged oral agreement to pay Plaintiff: "(1) for all accumulated comp time (113.5 hours); (2) 274.48 hours of accumulated annual leave; (3) 160.00 *additional* hours; and (4) other amounts (as reflected [in Plaintiff's July 7, 2008 letter])"). The only evidentiary support Plaintiff offers for the alleged oral agreement is a letter authored by her. *See id.* (referencing *Doc. 249-5*). Plaintiff appears to contend that her letter, even in the absence of any evidence of Defendants' response, constitutes an enforceable agreement with Defendants. Plaintiff also fails to offer any evidence, apart from her self-serving allegations, that Defendants breached the agreement as interpreted or understood by the parties.

To state a claim for breach of contract under New Mexico law, Plaintiff must allege "the existence of a contract, breach of the contract, causation, and damages." *See, e.g., Abreu v. KM*, 797 F. Supp.2d 1199, 1247 (D.N.M. 2011). Plaintiff's July 7, 2008 letter sets forth her understanding of the parties' agreement and requests that Chief Deputy Lama let her know "[i]f [his] understanding or accounting of the hours differs from that reflected above." *See Doc. 249-*

13

*5* at 2.  She also states that she is "prepared to accept Mr. King's offer and sign the July 3, 2008 letter," provided that the parties are in agreement, and she requests that Mr. Lama call her at his earliest convenience.  *Id.* at 3.  There is no evidence, apart from Plaintiff's argument, to indicate that Defendants acquiesced to any requests for additional benefits not contained in Mr. Lama's July 3, 2008 letter.  Plaintiff's ultimate acceptance of the July 3, 2008 offer, as indicated by her July 7, 2008 signature, also fails to indicate any changes to the original terms.

Finally, Plaintiff provides no evidence that Defendants failed to honor their agreements. Even if Plaintiff had come forward with such evidence, it would appear that her remedy would lie in a breach of contract claim in which she would be eligible to receive the benefit of her bargain – payment of the leave time to which Defendant allegedly agreed, not the resurrection of claims she had voluntarily waived in exchange for that sum.

## IV. CONCLUSION

The parties do not dispute that Plaintiff signed a waiver, agreeing to hold the Attorney General's Office, Attorney General King, and any members of his staff harmless "in any matter related to the separation of [her] employment."  Considering the totality of the circumstances surrounding the waiver, including Plaintiff's education and experience, her opportunities for deliberation and negotiation, and other relevant factors, I find that the waiver is enforceable. Based on the plain, unambiguous language of the waiver, Plaintiff is barred from pursuing her claims of discrimination related to her separation.

**Wherefore,**

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment Due to Plaintiff's Waiver of Claims *(Doc. 249)* is granted in part.  The Court will dismiss Plaintiff's Count Two of Plaintiff's Second Amended Complaint *(Doc. 186)*, insofar as it alleges sex

discrimination in violation of Title VII in relation to her separation from the New Mexico Attorney General's Office.

_____
UNITED STATES CHIEF MAGISTRATE JUDGE